## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IAIN WALKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11 C 2967 |
| | ) | |
| NORENE ANN WALKER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Iain Walker's Amended Petition (Petition) for Return of Child brought pursuant to International Child Abduction Remedies Act (ICARA), 42 U.S.C. § 11601 *et seq.,* which implements the Hague Convention on the Civil Aspects of International Child Abduction (Convention), T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (Oct. 25, 1980). For the reasons stated below, the Petition is denied.

## BACKGROUND

Petitioner seeks to secure the immediate return of his children to Australia who he claims were wrongfully removed from Australia and wrongfully retained in the United States by Respondent Norene Ann Walker, the mother of the children.

(Am. Pet. Par. 5, 9). Petitioner contends that in June 2010 the Petitioner, Respondent, and their children (Children) traveled from Australia to the United States for a temporary extended trip to visit family in the United States and that Respondent has wrongfully retained the Children in the United States. Respondent contends however, that the Children's habitual residence is now the United States. Respondent claims that Petitioner abandoned the Respondent and the Children and after Respondent filed for divorce in November 2010, Petitioner sent Respondent a letter dated January 21, 2011 (Jan 21 Letter) indicating his consent for the Children to permanently remain in the United States with the Respondent.

Respondent first argues that since the habitual residence of the Children was in the United States at the time the Petitioner claimed that the Children were wrongfully retained, under the Convention the Children could not have been considered to have been wrongfully retained. In addition, Respondent argues that since Petitioner had abandoned the Children and consented to the permanent residence of the Children in the United States, the abandonment and consent exceptions to wrongful retention apply.

Petitioner filed the instant action on May 4, 2011, and filed an amended Petition on May 18, 2011. The Court ordered the parties to file memorandums in support of their positions in this case, and based on those filings it was apparent that there were disputed material facts and the court set an evidentiary hearing for September 27, 2011. On September 27 and 28, 2011, the court conducted an evidentiary hearing. Petitioner and Respondent were the only witnesses who

2

testified. In addition, the court briefly interviewed the two oldest Children, ages 14 and 12, *in camera*. During the evidentiary hearing the Court admitted the following exhibits into evidence: Petitioner's Exhibit 1 (E-mail), Exhibit 2 (School Documents), Exhibit 3 (Divorce Document) , Exhibit 4 (Jan 30 Letter), and Exhibit 5 (Feb 16 Letter):  Respondent's Exhibit 1 (Jan 21 Letter) and Exhibit 8 (Travel Itinerary).

## MOTION FOR A DIRECTED VERDICT

At the conclusion of the Petitioner's presentation of evidence in his case-in-chief, Respondent moved for a directed verdict. The court deferred the ruling in accordance with Federal Rule of Civil Procedure 52(c)(Rule 52(c). Pursuant to Rule 52(c), "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." *Id.*; *see also Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 451 (7th Cir. 2006)(explaining that in a bench trial a motion for a directed verdict is resolved in accordance with Rule 52(c); *Aviles v. Cornell Forge Co.*, 241 F.3d 589, 592 (7th Cir. 2001)(explaining that the Court "review the district court's grant of a directed verdict under" Rule 52); *Oasis Industries, Inc. v. G.K.L. Corp.*, 1997 WL 85167, at *2 (N.D. Ill. 1997)(explaining that "[i]n a bench trial, where the judge is the factfinder, the appropriate vehicle for dismissing the case at the close of a plaintiff's case is Rule

3

41(b)"). Pursuant to Rule 52(c), "[t]he court may, however, decline to render any judgment until the close of the evidence," and "[a] judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)." Fed. R. Civ. P. 52(c).

Respondent argues that the court lacked jurisdiction to hear this case. Respondent argues that Petitioner alleges in the Petition that the alleged wrongful removal occurred in June 2010, but that Petitioner failed to present any evidence to support such a theory. Respondent argues that the evidence presented by Petitioner showed that Petitioner himself accompanied the family to the United States and that it is undisputed that the Petitioner consented to the Children's presence in the United States in June 2010. However, the allegations in the pleadings are no longer at issue in this case. The mere fact that the dates included in the Petition are not the same after a review of the evidence does not mean that this court lacked subject matter jurisdiction at the initiation of these proceedings. The court had subject matter jurisdiction when this action was brought. *See, e.g., Hukic v. Aurora Loan Services*, 588 F.3d 420, 427 (7th Cir. 2009). The fact that the evidence ultimately indicates dates other than those initially specified in the Petition does not mean that this court lacked subject matter jurisdiction to hear this case. Pursuant to Federal Rule of Civil Procedure 15(b), when there is an objection at trial "that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended." Fed. R. Civ. P. 15(b). However, there were not any new issues raised at trial not identified in the Petition or any new material facts that would have required an

amendment to the Petition.

Respondent also argues that there was no evidence of a wrongful removal introduced by Petitioner. ICARA enables "a person whose child has wrongfully been removed to the United States in violation of the Convention to petition for return of the child to the child's country of 'habitual residence,' unless certain exceptions apply." *Norinder v. Fuentes*, 2011 WL 3966153, at *5 (7th Cir. 2011). The Convention defines "wrongful removal" as when "at the time of removal," the petitioner would have exercised his custody rights, "but for the . . . removal." Convention Art. 3. The evidence presented during Petitioner's case-in-chief undisputedly showed that the Children were not wrongfully removed from Australia. Petitioner's own testimony indicated that he agreed that the Children would travel to the United States in June 2010 and, in fact, he accompanied them to the United States. Therefore, based on the above, the court denies Respondent's motion for a directed verdict to the extent that she argues that this court lacks subject matter jurisdiction. However, the court grants Respondent's motion for a directed verdict on the wrongful removal claim as there was no wrongful removal of the Children.

## EVIDENTIARY ISSUES

During the evidentiary hearing Respondent moved for the admission of the Jan 21 Letter. Petitioner objected to the admission of the Jan 21 Letter, arguing that it was prohibited under Federal Rule of Evidence 408 (Rule 408). The court reserved its ruling on this issue and subsequently admitted the Jan 21 Letter into evidence and

also admitted the two follow-up letters offered by Petitioner dated January 30, 2011

(Jan 30 Letter), and February 16, 2011 (Feb 16 Letter). Rule 408 provides the

following:

> (a) Prohibited uses.--Evidence of the following is not admissible on
> behalf of any party, when offered to prove liability for, invalidity of, or
> amount of a claim that was disputed as to validity or amount, or to
> impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish--or accepting or
> offering or promising to accept--a valuable consideration in
> compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding
> the claim, except when offered in a criminal case and the negotiations
> related to a claim by a public office or agency in the exercise of
> regulatory, investigative, or enforcement authority.
>
> (b) Permitted uses.--This rule does not require exclusion if the evidence
> is offered for purposes not prohibited by subdivision (a). Examples of
> permissible purposes include proving a witness's bias or prejudice;
> negating a contention of undue delay; and proving an effort to obstruct
> a criminal investigation or prosecution.

The purpose of Rule 408 is "to encourage settlements." *Bankcard America,*

*Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 483 (7th Cir. 2000). Rule 408

"is not an absolute ban on all evidence regarding settlement negotiations." *Id.* at 484.

In deciding whether to admit evidence relating to settlement discussions the court

should consider the "chilling effect" on settlement negotiations and evidence is more

likely admissible if it involves a dispute other than the one before the court. *Zurich*

*American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 689 (7th Cir. 2005). In the

instant action, the Jan 21 Letter involved settlement negotiations in entirely separate

divorce proceedings. Petitioner has not shown that the admission of the Jan 21 Letter

6

would impair the settlement process in the underlying divorce action and has not shown that the Jan 21 Letter should be excluded. Therefore, the Jan 21 Letter is admitted into evidence.

## WITNESS CREDIBILITY

At the evidentiary hearing the Petitioner testified. I find, based on my observations in court of Petitioner's tesimony and demeanor, that the Petitioner was being evasive during the evidentiary hearing. Nor was the Petitioner's testimony in certain regards credible on its face. For example, although the Petitioner testified that he never asked for a divorce prior to June 2010, the Respondent gave contrary credible testimony. The Respondent testified that she and Petitioner married in Evanston, Illinois and lived in the United States for the first eight years of their marriage and agreed that they would then live in Australia for five years. Respondent testified that while they lived in Australia in September 2009, Petitioner asked Respondent for a divorce, indicating that their marriage was not working out. Respondent also testified that she kept telling the Petitioner that they had lived in Australia for over five years and they should return to the United States. Respondent further testified that they participated in marriage counseling in Australia and the issue of their return to the United States was one of the subjects of those counseling sessions.

Another example, is that Respondent testified that when the family came to the United States in June 2010, they went on a vacation on the west coast and looked for

housing to live permanently in the United States. She testified that they visited a real estate agent, looked at pamphlets, discussed prices, discussed locations, and discussed generally what would be a comfortable place to live and a good school district for the Children. When questioned on this topic, Petitioner admitted that he and his wife visited the real estate agency and looked at pamphlets, but denied that he looked for housing. When questioned further, Petitioner testified that he did so just out of curiosity. The Petitioner testified that he believed that the Children were going to return to Australia for school in the beginning of 2011. However, the Petitioner helped in the transfer of transcripts to the United States for the enrollment of the Children in school in the United States and the Petitioner was aware that the Children would be attending school in the United States at least until June 2011. In observing the Petitioner's demeanor and his attempts to selectively answer pertinent questions, this court concludes that the Petitioner's testimony was not entirely credible. Based on the evidence, it is clear that the Petitioner agreed with the Respondent to return to the United States after they had lived in Australia for a few years, that Petitioner and Respondent made an attempt to re-establish their lives in the United States, in that, Petitioner and Respondent made efforts to find housing in the United States, and that Petitioner changed his mind and decided to return to Australia in July 2010 and soon thereafter did not provide financial support for the Children. Based on the evidence, it is apparent that Petitioner got upset after Respondent filed for divorce proceedings in the United States and threatened to bring an action by claiming abduction of the Children under the Convention.

8

At the evidentiary hearing Respondent also testified. I find, based on my observations in court of Respondent's testimony and demeanor, that Respondent's testimony was entirely credible. The two oldest Children, ages 14 and 12 also briefly testified *in camera* and were credible. The Children's testimony does not impact this court's ruling in any way. It is apparent that the Children love both of their parents.

## **FINDINGS OF FACT**

(1)     The three Children are all under the age of 16 years.

(2)     Petitioner and Respondent were married in Evanston, Illinois and lived in Seattle, Washington for approximately eight years before moving to Australia, and, while residing in the United States, the oldest of the Children was born.

(3)     In 1998 Petitioner, Respondent, and their child moved to Australia.

(4)     Before the family moved to Australia, the Petitioner promised Respondent that the move would only be for five years and the family would then return to the United States.

(5)     While living in Australia, the two younger Children were born.

(6)     Petitioner, Respondent, and their three Children resided in Australia prior to June 2010, but made several extended trips to the United States.

(7)     In June 2010, Petitioner, Respondent, and the Children traveled to the United States and prior to coming to the United States made arrangements for the Children to attend school in the United States until June 2011.

(8)     Upon arriving in the United States, Petitioner, Respondent, and the Children

went on a vacation on the west coast and looked for housing before moving in the building that the Respondent's parents resided in.

(9)     In July 2010, Petitioner returned to Australia and Respondent and the three Children remained in the United States.

(10)    In September 2010, the Children enrolled in school in the United States.

(11)    Petitioner helped in arranging for the transfer of transcripts from Australia to the United States to assist in the enrollment of the Children in school in the United States.

(12)    Petitioner knew that the Children would attend school in the United States at least until June 2011.

(13)    In November 2010, Respondent filed for a divorce in the United States.

(14)    In the Jan 21 Letter, Petitioner consented that the Children could continue to live permanently with the Respondent in the United States.

(15)    The Respondent decided to permanently remain in the United States with the Children when she received the Jan 21 Letter.

(16)    Respondent responded to the Jan 21 Letter with the Jan 30 Letter and Petitioner then replied with the Feb 16 Letter.  After consenting for the Children's permanent residence in the United States in the Jan 21 Letter, nowhere in the Feb 16 Letter did the Petitioner demand the return of the Children to Australia.  Instead, in the Feb 16 Letter, Petitioner continued to bargain relating to a property settlement and the amount relating to the support of the Children.

10

(17)    Petitioner did not visit the Children after he left the United States in July 2010 and before he filed the Petition.

(18)    Petitioner failed to support his Children financially for several months before filing the Petition and Respondent had to borrow money and work to support the Children.

(19)    Petitioner did not demand the return of the Children until five months after he had consented for the Children to remain in the United States permanently with the Respondent and seven months after Respondent filed for divorce, indicating that she would seek custody of the Children.

(20)    It was only after the Respondent filed for divorce and the Petitioner was unsuccessful in persuading the Respondent not to seek default against him that Petitioner had second thoughts and decided to file a charge of abduction of the Children under the Convention and demand the return of the Children to Australia.

## CONCLUSIONS OF LAW

The court initially notes that this case involves a unique set of facts that places it outside of the scope of typical abduction cases heard under the Convention.

## I.  ICARA

The instant Petition is brought pursuant to ICARA, which provides in part the following:

The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights. Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies. The Convention provides a sound treaty framework to help resolve the problem of international abduction and retention of children and will deter such wrongful removals and retentions.

42 U.S.C. § 11601(4). In regard to the burdens of proof by Petitioner and

Respondent, ICARA provides the following:

(1) A petitioner in an action brought under subsection (b) of this section shall establish by a preponderance of the evidence–
(A) in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and

(B) in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights.

(2) In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing--

(A) by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and

(B) by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.

42 U.S.C. § 11603(e). Pursuant to 42 U.S.C. § 11603(a), "[t]he courts of the States

and the United States district courts shall have concurrent original jurisdiction of

actions arising under the Convention." *Id.* Pursuant to 42 U.S.C. § 11603(b),"[a]ny

person seeking to initiate judicial proceedings under the Convention for the return of

a child or for arrangements for organizing or securing the effective exercise of rights

of access to a child may do so by commencing a civil action by filing a petition for

12

the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." *Id.* Pursuant to 42 U.S.C. § 11603(d), "[t]he court in which an action is brought under subsection (b) of this section shall decide the case in accordance with the Convention." *Id.*

## II.  GENERAL CONVENTION PROVISIONS

Article 3 of the Convention provides that "[t]he removal or the retention of a child is to be considered wrongful where – a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State *in which the child was habitually resident immediately before the removal or retention*; and b)       at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention. . . ." Hague Convention, art. 3 (emphasis added).

## III.  WRONGFUL REMOVAL CLAIM

In the instant action, Petitioner has brought a wrongful removal claim.  As indicated above in regard to the directed verdict, Petitioner has failed to show any wrongful removal.  To the contrary, Petitioner not only consented for the Children's travel to the United States in June 2010, but he actually accompanied the Children to the United States.  In addition, Petitioner, Respondent, and the Children went on a vacation to the west coast of the United States before Petitioenr returned to Australia.

13

Thus, even if the court considers that the Children's habitual residence was in Australia prior to June 2010, based on the above facts, Petitioner has failed to meet his burden of showing a wrongful removal of the Children.

## IV.  WRONGFUL RETENTION CLAIM

Petitioner has also brought a wrongful retention claim contending that the Children were wrongfully retained in the United States after they arrived in June 2010.  For a wrongful retention claim under the Convention, a petitioner must establish by a preponderance of the evidence: (1) that the child is under the age of 16 years, (2) the child was wrongfully retained, (3) the child was wrongfully retained from his or her habitual residence, and (4) the retention was in violation of the custody rights of the parent that remains in the habitual residence of the child. 42 U.S.C. § 11603(d); Hague Convention, art. 3, 4; *see also Thompson v. Brown*, 2007 WL 54100 at *5 (N.D. Ill. 2007)(stating that in assessing whether there was a wrongful retention, the court should determine: (1) when the wrongful retention took place, (2) what was the child's habitual residence "[i]mmediately prior to the. . . retention," (3) whether "the removal or retention breach[ed] the rights of custody attributed to the petitioner under the law of the habitual residence," and (4) whether "the petitioner [was] exercising those rights at the time of the removal or retention"). Under 42 U.S.C. § 11603(f) the terms "wrongful removal or retention" and "wrongfully removed or retained", are defined as "used in the Convention, [to] include a removal or retention of a child before the entry of a custody order regarding

that child. . . ." *Id.* The Convention defines "wrongful retention" as when "at the time of . . . retention," the petitioner exercised his custody rights or would have exercised his custody rights, "but for the . . . retention." Hague Convention, art. 3.

## A. DATE OF RETENTION

For the wrongful retention claim, the court must first determine the date of the alleged wrongful retention. *Thompson*, 2007 WL 54100 at *5. A retention occurs when the petitioner "unequivocally signaled h[is] opposition to [the child's] presence in the United States, " and at that point the child "remained with [the parent in the United States] against [the other parent's] wishes and was therefore retained." *Karkkainen v. Kovalchuk*, 445 F.3d 280, 290-91 (3rd Cir. 2006)(stating in addition that the date of retention would be the last day that the child remained in the United States with both parents' permission).

In the instant action, based on the evidence presented in this case, the alleged wrongful retention occurred on May 4, 2011, when the Petitioner filed the original Petition under the Convention alleging wrongful retention. Prior to that date, there is no evidence that any wrongful retention of the Children occurred. Petitioner did not present evidence that showed that he demanded the return of the Children to Australia or indicated that the Children were being wrongfully retained in the United States prior to the filing of the original Petition. Although Petitioner made certain references to the Children in the Jan 21 and Feb 16 Letters, it was apparent that Petitioner was referring to the Convention as a bargaining chip and Petitioner's main

15

concern in the letters was the negotiation of support he would pay to the family and the property settlement amount.

Since the date of the alleged wrongful retention was May 4, 2011, Petitioner has the burden to establish by a preponderance of the evidence that immediately before that date, the Children were being retained away from their habitual residence in violation of the custody rights of the Petitioner in Australia.


### B.  HABITUAL RESIDENCE

Petitioner bears the burden of establishing by a preponderance of the evidence that immediately before May 4, 2011, the Children's habitual residence was in Australia.  Respondent argues that immediately before May 4, 2011, the Children's habitual residence was the United States.

For a wrongful retention claim, the pertinent inquiry under the Convention is what the child's habitual residence was "immediately before the . . . retention." Hague Convention, art. 3.  The Seventh Circuit has held that a child's habitual residence is determined by "'the shared actions and intent of the parents coupled with the passage of time.'"  *Norinder*, 2011 WL 3966153, at *5 (quoting *Koch v. Koch,* 450 F.3d 703 (7th Cir. 2006)); *see also Koch*, 450 F.3d at 715 (7th Cir. 2006)(stating that the "establishment of a habitual residence requires an actual change in geography, as well as the passage of an appreciable amount of time").  The Seventh Circuit has indicated that "habitual residence must encompass some form of settled purpose but the settled purpose need not be to stay in the new location forever; rather

the family must have a sufficient degree of continuity to be described as settled."
*Koch*, 450 F.3d at 717 (citing *Silverman v. Silverman,* 338 F.3d 886, 896 (8th Cir. 2003)).

The Seventh Circuit has cautioned, however, that in regard to the
determination of a habitual residence, the "shared intent to someday return to a prior
place of residence does not answer the primary question of whether that residence
was effectively abandoned and a new residence established by the shared actions and
intent of the parents coupled with the passage of time." *Id.* at 715. In addition, the
length of the time that the child has spent in one country "cannot be decisive,"
because otherwise a parent could establish a habitual residence of a child by the
"wrongful removal and sequestering of a child." *Kijowska v. Haines*, 463 F.3d 583,
587 (7th Cir. 2006)(quoting *Diorinou v. Mezitis,* 237 F.3d 133, 142 (2d. Cir.2001)).

The Seventh Circuit has indicated that the definition of a domicile is not the
same as the definition of a habitual residence. *Norinder*, 2011 WL 3966153, at *5.
In the Seventh Circuit, a domicile is defined as the state where a person is physically
present "with intent to remain there" and "by some objective act," the person has
shown "his intention to maintain the residency indefinitely." *Denlinger v. Brennan*,
87 F.3d 214, 216 (7th Cir. 1996); *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir.
1993). Domicile is also defined by the Seventh Circuit as "a person's legal home,
the permanent residence of a person or the place to which he [or she] intends to
return even though he [or she] may actually reside elsewhere." *Koch*, 450 F.3d at
712 n.7 (internal quotations omitted)(quoting Black's Law Dictionary 484 (6th Ed.
1990)). The need for uniform interpretation of the Convention forecloses courts

17

from equating the definition of a habitual residence with the definition of domicile, since domicile is defined "differently in different jurisdictions." *Kijowska*, 463 F.3d at 587.

In the instant action, Petitioner has failed to establish by a preponderance of the evidence that at the time of the alleged wrongful retention, the Children's habitual residence was Australia. The evidence shows that immediately before May 4, 2011, the date of the alleged wrongful retention, the Children's habitual residence was the United States. The Children's habitual residence became the United States at the latest after January 21, 2011, and there is ample evidence indicating that Petitioner and Respondent shared an intent to make the Children's habitual residence the United States sooner than January 21, 2011. For example, Petitioner clearly indicated his consent in the Jan 21 Letter. Petitioner then took no action to attempt to visit the Children or to get the Children returned to Australia until five months later. There was also evidence that even prior to January 2011 Petitioner looked for houses in the United States and indicated an intent to have the children permanently remain in the United States. It is interesting to note that Petitioner stated in the Feb 16 Letter that he had returned to Australia in July 2010 "for business reasons," thus indicating that he was not returning to Australia temporarily for business reasons.

A habitual residence can change where there is a shared intent by the parents to abandon a habitual residence. *Polson v. Polson*, 578 F.Supp.2d 1064, 1071 (N.D. Ill. 2008). The record reflects that prior to the Respondent's filing for divorce and particularly after Respondent filed for divorce, Petitioner failed to actively involve

18

himself in the lives of the Children. Petitioner failed to visit the Children or take any action to seek the return of the Children to Australia until five months later. The Petitioner abandoned his Children and agreed to allow them to abandon their habitual residence in Australia at the latest in January 2011. Respondent has shown by a preponderance of the evidence that Petitioner joined in Respondent's intent to have the Children abandon their habitual residence in Australia and make the United States their new habitual residence.

## C. ABANDONMENT OF CUSTODY RIGHTS

Respondent also contends that Petitioner abandoned the Children in the United States. The petitioner in an action brought under the Convention has the burden of proving the exercise of custody rights by a preponderance of the evidence. Hague Convention, art. 3; 42 U.S.C. § 11603(e)(1)(A). The Convention does not define the word "exercise." *Friedrich v. Friedrich*, 78 F.3d 1060, 1064-65 (6th Cir. 1996). Courts will "liberally find" the exercise of custody rights "whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *Bader v. Kramer*, 484 F.3d 666, 671 (4th Cir. 2007)(citing *Friedrich*, 78 F.3d at 1065). Courts have also held that "there may be situations when a long period of unexplainable neglect of the child could constitute non-exercise of otherwise valid custody rights under the Convention. . . ." *Friedrich*, 78 F.3d at 1066. When a person has valid custody rights relating to a child pursuant "to the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody

19

rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child." *Id.*

It is clear from the evidence in this case that after returning to Australia in July 2010 and at the latest in January 2011, Petitioner abandoned the Children. Petitioner did not return to visit and offered no justification for failing to visit since July 2010. Petitioner, who was the sole breadwinner of the Family, also ultimately cut the Respondent and the Children off from financial support. Although Petitioner had correspondence with Respondent in the Jan 21 and Feb 16 Letters, the main concern of Petitioner in such correspondence was the negotiation of support payments and property settlement. Respondent has shown that after returning to Australia in July 2010 and at the latest in January 2011, Petitioner abandoned the Children.

Therefore, based on the above, Petitioner has failed to establish his prima facie case by a preponderance of the evidence that the Children were wrongfully retained from their habitual residence at the time of the alleged wrongful retention.

If a child's habitual residence was the United States at the time of retention "the analysis is complete as the Hague Convention [does] not apply because her retention in the United States would not be wrongful as defined by Article 3." *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 271 (3rd Cir. 2007); *see also Koch,* 450 F.3d at 710 (stating that "[i]f the habitual residence of the children at the time of their removal was the United States, then [the] removal of the children to the United States would not be considered wrongful under the Convention"). On May 4, 2011, the time of the alleged wrongful retention, the Children were retained in the United

States and immediately before that date the United States was their habitual residence. In addition, although Petitioner has presented evidence to show that he had rights of custody under the laws of Australia, Petitioner abandoned the Children and consented to the Children residing in the United States and did not attempt to exercise any custody rights.

Therefore, based on the above, since the evidence clearly shows that immediately before May 4, 2011, the Children's habitual residence was the United States, and Petitioner abandoned his custody rights, Petitioner has failed to meet his burden for his wrongful retention claim and the Petitioner's wrongful retention claim is denied.

## V.  CONSENT AND ABANDONMENT EXCEPTIONS

There is absolutely no evidence presented by the Petitioner as to the wrongful removal claim and this court has entered a directed verdict in favor of Respondent on that claim. As to the Petitioner's claim for wrongful retention, this court has denied Petitioner's wrongful retention claim as discussed above. Even if Petitioner had met his burden on the wrongful retention claim, Respondent has asserted exceptions under the Convention.

Respondent contends, on the issue of retention, that Petitioner consented to allowing the Children to remain permanently in the United States and also abandoned his custody rights. Article 13 of the Convention provides in part that "the judicial or administrative authority of the requested State is not bound to order the

return of the child if the person, institution or other body which opposes its return establishes that –*a)* the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention . . . ." Hague Convention, art. 13(a); *Habrzyk v. Habrzyk*, 759 F.Supp.2d 1014, 1025 (N.D. Ill. 2011).  The respondent must establish the consent exception by a preponderance of the evidence.  *Baxter*, 423 F.3d at 368.

In the instant action, Respondent has established by a preponderance of the evidence that at the latest on January 21, 2001, as reflected in the Jan 21 Letter, Petitioner gave his unconditional consent to allow the Children to remain in the United States permanently.  The evidence also reflects that Petitioner failed to visit the Children after leaving the United States in July 2010 or be actively involved in the Children's lives as a parent and subsequently cut off support for the Children.  In 2011, the Petitioner sent the Feb16 Letter discussing the terms of the divorce, but the Petitioner still did not demand the return of the Children, and merely continued to negotiate the property settlement and amount of support to be provided by the Petitioner.  In addition, as addressed earlier in this memorandum opinion in regard to the abandonment of custody rights, Respondent has shown by a preponderance of the evidence that the Petitioner abandoned his custody rights prior to his claim of wrongful retention.  Thus, Respondent has established the consent exception and the abandonment of his custody rights by a preponderance of the evidence.

Thus, based on the above, even if Petitioner had established a prima facie case

for his wrongful removal or wrongful retention claim, Respondent has established that the consent and abandonment exceptions apply in this case. Therefore, after a consideration of all the evidence presented in it totality, the Petition is denied.

## CONCLUSION

Based on the foregoing analysis, the court denies Respondent's motion for a directed verdict to the extent that she argues that this court lacks subject matter jurisdiction and grants Respondent's motion for a directed verdict on the wrongful removal claim. Petitioner's Petition for Return of Child brought pursuant to International Child Abduction Remedies Act is denied as Petitioner has failed to establish that the Children were wrongfully removed or wrongfully retained in the United States. This court further finds that even if Petitioner could establish a wrongful removal or retention, the consent exception and abandonment of custody rights under the Convention apply. This decision is not meant to make any findings concerning matters relating to divorce proceedings, including the issue of the custody of the Children in such proceedings. Both parties have waived any claim for attorneys' fees or other costs and final judgment is now entered in this action in favor of Respondent.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 20, 2011